**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| MARC ELLIOT,<br><br>             Plaintiff,<br><br>v.<br><br>HBO HOME ENTERTAINMENT CORP., a Delaware Corporation; JEHANE NOUJAIME, an individual; KARIM AMER, an individual; THE OTHRS, LLC, a Florida limited liability company; THE OTHRS LICENSING CORP., a Florida corporation; THE SQUARE, LLC, a New York limited liability company; ISABELLA CONSTANTINO, an individual; JOHN DOES 1–10,<br><br>             Defendants. | Case No. 4:23-cv-01611-SEP |

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>DEFENDANTS' MOTION TO DISMISS OR TRANSFER VENUE</u>**

LEWIS RICE LLC

Joseph E. Martineau (#32397MO)
Kolten C. Ellis (#74451MO)
600 Washington Avenue, Suite 2500
St. Louis, MO 63101
Telephone: 314.444.7600
Facsimile: 314.612.2042
jmartineau@lewisrice.com
kellis@lewisrice.com

BALLARD SPAHR LLP

Elizabeth Seidlin-Bernstein (*pro hac vice*)
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: 215.665.8500
Facsimile: 215.864.8999
seidline@ballardspahr.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT .......................................................................................... 1

BACKGROUND ................................................................................................................. 2

I.    THIS ACTION SHOULD BE DISMISSED FOR LACK OF PERSONAL
      JURISDICTION OVER DEFENDANTS ................................................................. 4

      A.    There is no general jurisdiction over any Defendant ................................... 5

      B.    There is no specific jurisdiction over any Defendant ................................... 7

            1.    Mr. Elliot cannot satisfy Missouri's long-arm statute ................... 7

            2.    Mr. Elliot cannot satisfy the Due Process Clause ........................ 8

II.   ALTERNATIVELY, THIS ACTION SHOULD BE DISMISSED FOR
      IMPROPER VENUE OR TRANSFERRED PURSUANT TO 28 U.S.C.
      §§ 1404(a) OR 1406(a) ......................................................................................... 11

      A.    This action should be dismissed for improper venue pursuant to
            Rule 12(b)(3) or transferred pursuant to 28 U.S.C. § 1406(a) .............................. 11

      B.    Alternatively, this action should be transferred to a more convenient
            forum pursuant to Section 1404(a) ........................................................... 12

III.  ALTERNATIVELY, THIS ACTION SHOULD BE DISMISSED FOR
      FAILURE TO STATE A CLAIM ........................................................................... 14

      A.    Plaintiff signed an agreement releasing any claims relating to
            *The Vow* ...................................................................................................... 15

      B.    Plaintiff fails to state a misappropriation or right of publicity claim .................... 16

            1.    Mr. Elliot gave written consent for the use of his name
                  and voice ........................................................................................ 17

            2.    The use of Mr. Elliot's name and voice in *The Vow* is
                  protected expression ...................................................................... 17

      C.    Plaintiff fails to state a conspiracy claim .............................................. 20

CONCLUSION ................................................................................................................. 20

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Alfano v. NGHT, Inc.*,
   623 F. Supp. 2d 355 (E.D.N.Y. 2009) ...................................................................18

*Allied Ins. Co. of Am. v. JPAULJONES L.P.*,
   491 F. Supp. 3d 472 (E.D. Mo. 2020)...................................................................10

*In re Apple, Inc.*,
   602 F.3d 909 (8th Cir. 2010) .........................................................................13, 14

*Ashanti v. City of Golden Valley*,
   666 F.3d 1148 (8th Cir. 2012) ...........................................................................3

*Beverley v. Choices Women's Med. Ctr., Inc.*,
   587 N.E.2d 275 (N.Y. 1991)................................................................................18

*Bihag v. A&E TV Networks, LLC*,
   669 F. App'x 17 (2d Cir. 2016) ..........................................................................16

*Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*,
   42 F.4th 948 (8th Cir. 2022) ..................................................................... *passim*

*C.B.C. Distrib. & Mktg. v. Major League Baseball Advanced Media, L.P.*,
   505 F.3d 818 (8th Cir. 2007) .........................................................................17, 19

*Calder v. Jones*,
   465 U.S. 783 (1984).............................................................................................9

*Centro Empresarial Cempresa S.A. v. América Móvil, S.A.B. de C.V.*,
   952 N.E.2d 995 (N.Y. 2011).............................................................................15

*Challenger Powerboats, Inc. v. Evans*,
   2007 U.S. Dist. LEXIS 72319 (E.D. Mo. Sept. 27, 2007)......................................2

*Colon v. City of Rochester*,
   762 N.Y.S.2d 749 (N.Y. App. Div. 2003) ..............................................................18

*Creative Calling Sols., Inc. v. LF Beauty Ltd.*,
   799 F.3d 975 (8th Cir. 2015) ..............................................................................7

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)..........................................................................................5, 7

*Delan v. CBS, Inc.*,
   458 N.Y.S.2d 608 (N.Y. App. Div. 1983) ..............................................................18

*Discovery Pier Land Holdings, LLC v. Visioneering Envision.Design.Build, Inc.*,
    2015 U.S. Dist. LEXIS 43497 (E.D. Mo. Apr. 2, 2015)....................................................12, 13

*Doe v. TCI Cablevision*,
    110 S.W.3d 363 (Mo. 2003) ...........................................................................................16, 18

*Elliot v. Lions Gate Entm't Corp.*,
    639 F. Supp. 3d 1012 (C.D. Cal. 2022) ...............................................................................19

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
    141 S. Ct. 1017 (2021).............................................................................................................7

*Hex Stone v. JRC Marine*,
    2019 U.S. Dist. LEXIS 241041 (E.D. Mo. Aug. 7, 2019).................................................12, 13

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984).................................................................................................................4

*Kendall Hunt Publ'g Co. v. Learning Tree Publ'g Corp.*,
    74 F.4th 928 (8th Cir. 2023) .................................................................................................10

*Klapper v. Graziano*,
    10 N.Y.S.3d 560 (App. Div. 2015).................................................................................15, 16

*Krupnik v. NBC Universal, Inc.*,
    2010 N.Y. Misc. LEXIS 6785 (N.Y. Sup. Ct. June 29, 2010).................................................17

*Lohan v. Take-Two Interactive Software, Inc.*,
    97 N.E.3d 389 (N.Y. 2018).....................................................................................................18

*Messenger v. Gruner + Jahr Printing & Publ'g*,
    727 N.E.2d 549 (N.Y. 2000) ..................................................................................................19

*Mitchell v. Eli Lilly & Co.*,
    159 F. Supp. 3d 967 (E.D. Mo. 2016)....................................................................................11

*Moore v. Cohen*,
    548 F. Supp. 3d 330 (S.D.N.Y. 2021).................................................................................15, 16

*Pederson v. Frost*,
    951 F.3d 977 (8th Cir. 2020) ...................................................................................................2

*Perficient, Inc. v. Priore*,
    2016 U.S. Dist. LEXIS 28335 (E.D. Mo. Mar. 7, 2016) .................................................13, 14

*State ex rel. PPG Indus. v. McShane*,
    560 S.W.3d 888 (Mo. 2018) .....................................................................................................8

*Psenicska v. Twentieth Century Fox Film Corp.*,
  409 F. App'x 368 (2d Cir. 2009) ........................................................16

*PVI, Inc. v. Ratiopharm GmbH*,
  253 F.3d 320 (8th Cir. 2001) ...........................................................15

*Sahm v. Avco Corp.*,
  2023 U.S. Dist. LEXIS 114897 (E.D. Mo. July 5, 2023) .......................4

*Shapiro v. NFGTV, Inc.*,
  2018 U.S. Dist. LEXIS 22879 (S.D.N.Y. Feb. 8, 2018) ........................16

*Thayil v. Cowell*,
  2011 U.S. Dist. LEXIS 6798 (W.D. Mo. Jan. 25, 2011) ......................10

*United States v. Raniere*,
  2019 U.S. Dist. LEXIS 110735 (E.D.N.Y. July 2, 2019) .....................18

*United States v. Raniere*,
  55 F.4th 354 (2d Cir. 2022) ...............................................................2

*Walden v. Fiore*,
  571 U.S. 277 (2014) .......................................................................9, 10

*Waldman v. PLO*,
  835 F.3d 317 (2d Cir. 2016) ...............................................................5

*Weimer v. Gen. Motors LLC*,
  2017 U.S. Dist. LEXIS 127776 (E.D. Mo. Aug. 11, 2017) ....................2

*Wiles v. Capitol Indem. Corp.*,
  280 F.3d 868 (8th Cir. 2002) ............................................................20

*Williston v. Vasterling*,
  536 S.W.3d 321 (Mo. Ct. App. 2017) ................................................20

*Woodke v. Dahm*,
  70 F.3d 983 (8th Cir. 1995) ..............................................................12

**Statutes**

28 U.S.C. § 1391 ...................................................................................11

28 U.S.C. § 1404 .............................................................................11, 12

28 U.S.C. § 1406 .............................................................................11, 12

Mo. Rev. Stat. § 506.500 ........................................................................7

iv

N.Y. Civ. Rights Law § 51 ........................................................................................16, 17, 18, 19

N.Y. Civ. Rights Law § 70-a .............................................................................................19

N.Y. Penal Law § 250.00 ...................................................................................................20

N.Y. Penal Law § 250.05 ...................................................................................................20

**Other Authorities**

Fed. R. Civ. P. 12 .....................................................................................................*passim*

U.S. Const. amend. I ....................................................................................2, 17, 18, 19

Defendants Home Box Office, Inc. ("HBO," incorrectly sued as "HBO Home Entertainment Corp."), Jehane Noujaim (incorrectly sued as "Jehane Noujaime"), Karim Amer, The Othrs Licensing Corp., The Othrs, LLC, The Square, LLC, and Isabella Constantino (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss pursuant to Rules 12(b)(2), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure or transfer venue pursuant to 28 U.S.C. §§ 1404(a) or 1406(a).

## PRELIMINARY STATEMENT

Plaintiff Marc Elliot was a member of NXIVM, a cult-like self-improvement organization based in upstate New York whose leaders were convicted of serious crimes, including sex trafficking and racketeering. In this action, Mr. Elliot seeks to recover damages for the use of his name and voice in a documentary series about NXIVM called *The Vow*. Specifically, Mr. Elliot claims that Defendants violated his right of publicity and engaged in a conspiracy by recording a call between him and Defendant Isabella Constantino without his consent and using that recording in an episode of the series.

This case should be dismissed or, at a minimum, transferred to the Southern District of New York for multiple reasons. First, this Court lacks personal jurisdiction over Defendants because they have virtually no ties to Missouri and none of the conduct giving rise to this suit took place in or targeted Missouri. Second, venue in the Eastern District of Missouri is improper, and litigating this case in Missouri when all of the relevant conduct took place in New York and all of the Defendants are domiciled in New York would be highly inconvenient. Third, Mr. Elliot fails to state a claim as a matter law. The right of publicity and civil conspiracy claims he asserts were released by an agreement he signed in connection with his voluntary appearance in *The Vow*. In that same agreement, Mr. Elliot also gave permission for the use of his name and voice in the series, which forecloses his right of publicity claim. Even in the absence of an

1

agreement, however, Mr. Elliot's right of publicity claim would still fail because the use of the recorded call is expression protected from liability by the First Amendment and state law. Lastly, Mr. Elliot's conspiracy claim cannot survive when the tort underlying it—an alleged violation of his right of publicity—is based on conduct that is not actionable.  In short, Mr. Elliot's claims are subject to dismissal because he has brought them in the wrong forum and without any basis in law.

## BACKGROUND

Plaintiff Marc Elliot was a member of NXIVM, Compl. (Dkt. 1-1) ¶ 12, "a self-styled executive coaching and self-help organization" whose founder and "inner circle" were convicted of "various crimes, including sex trafficking, forced labor, identity theft, wire fraud, racketeering, sexual exploitation of a minor, possession of child pornography, and obstruction of justice." *United States v. Raniere*, 55 F.4th 354, 357 (2d Cir. 2022), *cert. denied*, 143 S. Ct. 1756 (Apr. 17, 2023).[1]  Mr. Elliot believes NXIVM's methods were "useful in overcoming his Tourette's Syndrome."  Compl. ¶ 12.  Defendant Isabella Constantino is a former member of NXIVM who received treatment for Tourette's Syndrome from Mr. Elliot and his colleagues at the organization's headquarters in Albany, New York.  Decl. of Isabella Constantino ("Constantino Decl.") ¶¶ 4-5.[2]

---

[1] "It is well-established that a district court may take judicial notice of public records such as judicial rulings, and consider them on a motion to dismiss."  *Challenger Powerboats, Inc. v. Evans*, 2007 U.S. Dist. LEXIS 72319, at *5 (E.D. Mo. Sept. 27, 2007).

[2] The Constantino Declaration is offered in support of Defendants' personal jurisdiction and venue arguments only.  This Court "may look beyond the pleadings to determine whether personal jurisdiction exists, including reviewing affidavits."  *Pederson v. Frost*, 951 F.3d 977, 979 (8th Cir. 2020).  Likewise, "the court may also consider evidence outside the pleadings to determine whether the chosen venue is appropriate."  *Weimer v. Gen. Motors LLC*, 2017 U.S. Dist. LEXIS 127776, at *10 (E.D. Mo. Aug. 11, 2017).

Defendants Jehane Noujaim and Karim Amer are filmmakers who directed *The Vow*, a documentary series about NXIVM that was produced by Defendants The Othrs, LLC, The Square, LLC, and Defendant HBO and distributed by HBO.  Compl. ¶¶ 21, 36, 40.  Both Mr. Elliot and Ms. Constantino voluntarily appeared in the second season of *The Vow*.  *Id.* ¶¶ 26-27, 38; Decl. of Lisa Heller ("Heller Decl.") Ex. A (episode in which Mr. Elliot and Ms. Constantino appear).[3]  In connection with his appearance, Mr. Elliot signed a Consent and Release (the "Agreement") that gave permission to The Square, LLC and its "affiliates, successors, licensees and assigns" (collectively, the "Producer") to "interview, film, photograph and record me starting July 11th, 2020."  Compl. Ex. 1.  Mr. Elliot further authorized the Producer to use that footage "and my name, voice, likeness and biography" in *The Vow*.  *Id.*  As part of the Agreement, Mr. Elliot promised "not to make any claim of any nature against the Producer or any third party relating to the Documentary Series and your filming of me, including but not limited to claims for moral rights, defamation, privacy, publicity, or payment."  *Id.*  He also agreed "to jurisdiction of state and federal courts located in New York, New York" and that "New York law shall govern this release."  *Id.*

Season 2, Episode 3 of *The Vow* portrayed Ms. Constantino fleeing NXIVM after learning of disturbing accusations against the organization's leaders.  Heller Decl. Ex. A at 23:02-24:10.  In the days after she left the organization, Ms. Constantino received calls and messages from a number of NXIVM members, including Mr. Elliot.  Constantino Decl. ¶ 6;

---

[3] The Court may consider "documents necessarily embraced by the complaint" on a Rule 12(b)(6) motion.  *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1150-51 (8th Cir. 2012).  This includes "documents whose contents are alleged in a complaint and whose authenticity no party questions," *id.*, such as the episode of *The Vow* at issue in this case.  Other than placing this video before the Court in support of Defendants' motion to dismiss for failure to state a claim, the Heller Declaration is offered in support of Defendants' personal jurisdiction and venue arguments only.  *See supra* n.2.

Heller Decl. Ex. A at 24:14-27:44. One of Mr. Elliot's calls with Ms. Constantino was depicted in the episode. Compl. ¶¶ 24, 32; Heller Decl. Ex. A at 24:37-27:44. Ms. Constantino permitted that call to be recorded by a film crew for use in *The Vow*. Constantino Decl. ¶ 6; Compl. ¶ 32. During the call, Mr. Elliot defended NXIVM and attempted to convince Ms. Constantino that the accusations were not true. Heller Decl. Ex. A at 24:37-27:44. Mr. Elliot alleges he did not know the call with Ms. Constantino was recorded and did not give consent for the recording to be used in the series. Compl. ¶ 25.

Mr. Elliot, proceeding *pro se*, first filed his Complaint in Missouri Circuit Court on October 31, 2023. Defendant HBO timely removed the case to this Court on December 15, 2023. *See* Dkt. 1 ¶ 1 (Notice of Removal). Mr. Elliot asserts two causes of action arising from the use of the recorded call with Ms. Constantino in *The Vow*. First, he claims that Defendants used his "voice, likeness and name to gain a commercial advantage for profit in a video production" in violation of his right of publicity. Compl. ¶ 56. Second, he claims that Defendants engaged in a civil conspiracy "to knowingly collect and publish for commercial gain" his "identity, likeness and voice" without his consent. *Id.* ¶ 60. He "seeks an award of damages in excess of $75,000." *Id.* at Wherefore cl. 2.

## I.     THIS ACTION SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION OVER DEFENDANTS.

Mr. Elliot bears the burden to make a prima facie showing that this Court has personal jurisdiction over each Defendant. *Bros. & Sisters in Christ, LLC v. Zazzle, Inc.* ("*BASIC*"), 42 F.4th 948, 951 (8th Cir. 2022); *see also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) ("Each defendant's contacts with the forum State must be assessed individually."). His conclusory allegation that jurisdiction is "proper," Compl. ¶ 1, does not suffice. *See Sahm v. Avco Corp.*, 2023 U.S. Dist. LEXIS 114897, at *10 (E.D. Mo. July 5, 2023). Given the complete

absence of any relevant connection between Defendants and the State of Missouri, this Court lacks both general and specific jurisdiction over Defendants, and the action should be dismissed pursuant to Rule 12(b)(2).

> **A.     There is no general jurisdiction over any Defendant.**

General jurisdiction, which permits a defendant to be sued in the forum state on any type of claim, is limited by the federal Constitution's Due Process Clause to defendants whose contacts with the state "are so continuous and systematic as to render them essentially at home" there. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (cleaned up); *see also BASIC*, 42 F.4th at 952. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Daimler*, 571 U.S. at 137. Typically, general jurisdiction over a corporation or LLC exists exclusively in the entity's place of formation and principal place of business. *Id.*; *see also Waldman v. PLO*, 835 F.3d 317, 332 (2d Cir. 2016) (*Daimler* test applies to unincorporated entities). Only in "an exceptional case" would a business entity's operations in another state could be "so substantial and of such a nature as to render" it at home there. *Daimler*, 571 U.S. at 139 n.19.

Here, there are no facts whatsoever to suggest that Defendants are "essentially at home" in Missouri:

- Defendant HBO was incorporated in Delaware and has a principal place of business in New York. Compl. ¶ 3; Decl. of Samantha Grande ("Grande Decl.") ¶ 3.[4] It distributes content via cable and streaming throughout the United States,

---

[4] The Grande Declaration is offered in support of Defendants' personal jurisdiction and venue arguments only. *See supra* n.2.

including to subscribers in Missouri.  Heller Decl. ¶ 3.  HBO has no offices, real

estate, or employees in Missouri, nor is it registered to do business in the state.

Grande Decl. ¶¶ 4-6.

- Defendant The Othrs, LLC was formed in Florida and has a principal place of

  business in New York.  Compl. ¶ 7; Decl. of Jehane Noujaim ("Noujaim Decl.")

  ¶ 4; Decl. of Karim Amer ("Amer Decl.") ¶ 3.[5]  Its sole members, Defendants

  Jehane Noujaim and Karim Amer, are domiciled in New York.  Compl. ¶¶ 4-5;

  Noujaim Decl. ¶ 1; Amer Decl. ¶ 1.

- Defendant The Othrs Licensing Corp. was incorporated in Florida and has a

  principal place of business in New York.  Compl. ¶ 8; Amer Decl. ¶ 4.  It is a

  loan-out company for Mr. Amer and has no other employees.  Amer Decl. ¶ 4.

- Defendant The Square, LLC was formed in New York and has a principal place

  of business in New York.  Compl. ¶ 9; Noujaim Decl. ¶ 5.  Its sole member is

  Noujaim Films, Inc., which was incorporated in New York and has a principal

  place of business in New York.  Noujaim Decl. ¶ 5.

- The Othrs, LLC, The Othrs Licensing Corp., The Square, LLC, and Noujaim

  Films, Inc. have no offices, employees, or bank accounts in Missouri, and they do

  not do any business in the state.  Compl. ¶¶ 7-8; Amer Decl. ¶ 6-7.

- Ms. Noujaim is an individual currently located in Cairo, Egypt and domiciled in

  New York.  Noujaim Decl. ¶ 1.  She has never been to Missouri.  *Id.* ¶ 9.

---

[5] The Noujaim and Amer Declarations are offered in support of Defendants' personal jurisdiction
and venue arguments only.  *See supra* n.2.

- Mr. Amer is an individual currently located in Cairo, Egypt and domiciled in New York. Amer Decl. ¶ 1. He has never been to Missouri. *Id.* ¶ 8.

- Ms. Constantino is an individual who lives in Buffalo, New York. Constantino Decl. ¶ 2. She has never been to Missouri. *Id.* ¶ 11.

In short, Defendants' contacts with Missouri are virtually nonexistent. Defendants clearly do not have the kind of "continuous and systematic" contacts necessary to trigger general jurisdiction. *Daimler*, 571 U.S. at 127.

### B. There is no specific jurisdiction over any Defendant.

Since this Court lacks general jurisdiction over Defendants, Mr. Elliot must establish that it has specific jurisdiction—*i.e.*, that his claims "arise out of or relate to" each Defendant's "contacts with the forum." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) (cleaned up). His burden is twofold: He must show that Missouri's long-arm statute permits jurisdiction and that the exercise of jurisdiction is consistent with due process. *See Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015). Mr. Elliot cannot satisfy either requirement.

### 1. Mr. Elliot cannot satisfy Missouri's long-arm statute.

Missouri's long-arm statute permits personal jurisdiction "as to any cause of action arising from the doing of" certain enumerated acts, such as transacting business or committing a tortious act, within the state. Mo. Rev. Stat. § 506.500. None of the conduct at issue in this case occurred in Missouri or was directed at the state.

The NXIVM organization that is the subject of *The Vow* was headquartered in Albany, New York. *See* Constantino Decl. ¶ 4. *The Vow* was directed by individuals domiciled in New York, produced by companies based in New York, and distributed by a company headquartered in New York. Compl. ¶¶ 3-5, 7-9; Noujaim Decl. ¶¶ 1, 4-6; Amer Decl. ¶¶ 1, 4-5; Grande Decl.

¶ 3. *The Vow* was distributed to viewers nationwide, including in Missouri. Compl. ¶ 39; Heller Decl. ¶ 3.

Mr. Elliot's claims center on the use of a recorded call between him and Ms. Constantino in one episode of the series. When the call occurred, both Mr. Elliot and Ms. Constantino were located in New York. Compl. ¶¶ 41-42; Constantino Decl. ¶ 7. Mr. Elliot later signed a release of claims relating to *The Vow* and provided a New York address on that agreement. Compl. Ex. 1. Defendants had no knowledge of Mr. Elliot living in Missouri when the series was produced or released. Noujaim Decl. ¶ 10; Amer Decl. ¶ 9; Constantino Decl. ¶ 10; Heller Decl. ¶ 9.

Mr. Elliot's current residence in Missouri and the availability of *The Vow* to HBO viewers in Missouri are not enough to confer specific jurisdiction under the long-arm statute. *See State ex rel. PPG Indus. v. McShane*, 560 S.W.3d 888, 892 (Mo. 2018) (long-arm statute not applicable when defendant "did nothing more than publish information that was equally available to individuals in each of the other 49 states as it was to residents of Missouri"). If it were, "virtually any other company with a website" could "be sued in Missouri if its website was viewed by a party who believes it was aggrieved by the information obtained." *Id.* at 893. As the Missouri Supreme Court observed, "[s]uch a result would open up Missouri courts to suits against companies who lack even negligible contacts with the state." *Id.* Missouri's long-arm statute does not extend to Mr. Elliot's claims, and for this reason alone he cannot establish specific jurisdiction.

### 2. Mr. Elliot cannot satisfy the Due Process Clause.

Even if Defendants' contacts with the state could meet the requirements of Missouri's long-arm statute, exercising jurisdiction over Defendants would not comport with due process. The essential question is whether Defendants' "conduct and connection" with Missouri would

cause them to "reasonably anticipate being haled into court" here. *BASIC*, 42 F.4th at 951. In deciding whether "the totality of the circumstances" permits specific jurisdiction, courts in the Eighth Circuit consider

> (1) the nature and quality of [the defendant's] contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties.

*Id.* at 952. "The first three factors are of primary importance and the fourth and fifth factors carry less weight." *Id.* (cleaned up). Moreover, for intentional torts such as those alleged in this case, courts apply the "effects test" set forth in *Calder v. Jones*, 465 U.S. 783 (1984), as an additional factor. *BASIC*, 42 F.4th at 954. The test "allows the assertion of personal jurisdiction over non-resident defendants whose acts are performed for the very purpose of having their consequences felt in the forum state." *Id.*

As discussed above, all of the conduct on which Mr. Elliot bases his claims took place in New York, not Missouri. The only real connection between the claims and Missouri is Mr. Elliot himself, but "mere injury to a forum resident is not a sufficient connection to the forum." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). Instead, it is *Defendants'* alleged "conduct that must form the necessary connection" with Missouri. *Id.* at 285. In *Calder*, the Supreme Court found that California courts had properly exercised jurisdiction over a magazine publisher because California was the "focal point" of the allegedly defamatory article at issue and thus satisfied the effects test. 465 U.S. at 788-89 (noting that article "concerned the California activities of a California resident," defamed "an entertainer whose television career was centered in California," was "drawn from California sources," and caused "the brunt of the harm" to plaintiff in California). Here, by contrast, *The Vow* does not make any reference to Missouri—indeed,

most of the key events depicted in the series, including those involving Mr. Elliot, occurred in

New York, where NXIVM was headquartered.  Constantino Decl. ¶¶  4-7; *see also Walden*, 571

U.S. at 291 (where defendant's "relevant conduct occurred entirely in" another state, "the mere

fact that his conduct affected plaintiffs with connections to the forum State does not suffice to

authorize jurisdiction").  There is no indication that anyone involved with the production or

distribution of *The Vow* was aware of Mr. Elliot's ties to Missouri, much less that Defendants

"uniquely or expressly" targeted Missouri by including the recorded call in the series.  *BASIC*, 42

F.4th at 954.

Nor does the mere availability of *The Vow* to viewers in Missouri, Compl. ¶ 39, satisfy

due process.  Courts in the Eighth Circuit have repeatedly held that distribution of a product or

service in the forum state is not enough to confer specific jurisdiction.  *See, e.g.*, *Kendall Hunt

Publ'g Co. v. Learning Tree Publ'g Corp.*, 74 F.4th 928, 931 (8th Cir. 2023) (sale of copyright-

infringing work in forum did not establish specific jurisdiction); *Allied Ins. Co. of Am. v.

JPAULJONES L.P.*, 491 F. Supp. 3d 472, 477 (E.D. Mo. 2020) ("[S]pecific jurisdiction does not

attach simply because a defendant operates a commercial website that is, at some level,

interactive and allow[s] for sales into the forum state."); *Thayil v. Cowell*, 2011 U.S. Dist.

LEXIS 6798, at *5 (W.D. Mo. Jan. 25, 2011) ("[A] broadcast of a show by itself is insufficient to

give rise to personal jurisdiction.").

The remaining factors to be considered—the interest of Missouri in providing a forum for

its residents and the convenience of the parties—do not change the analysis.  Missouri's interest

providing a forum for Mr. Elliot is offset by the fact that he signed a release "agree[ing] to

jurisdiction of state and federal courts located in New York, New York" for claims arising from

*The Vow*.  Compl. Ex. 1.  Furthermore, although Mr. Elliot may prefer to litigate in Missouri, it

would not be a convenient forum for Defendants.  *See BASIC*, 42 F.4th at 954 (when both sides would be inconvenienced in one forum, this factor "is neutral").

Because Defendants could not "reasonably anticipate being haled into court" in Missouri based on their contacts with the state, exercising jurisdiction would violate their due process rights.  *Id.* at 951.  The Complaint should therefore be dismissed for lack of personal jurisdiction.[6]

## II.    ALTERNATIVELY, THIS ACTION SHOULD BE DISMISSED FOR IMPROPER VENUE OR TRANSFERRED PURSUANT TO 28 U.S.C. §§ 1404(a) OR 1406(a).

To the extent this Court concludes that it has personal jurisdiction over Defendants, Mr. Elliot's action should nonetheless be dismissed for improper venue pursuant to Rule 12(b)(3) or transferred to the Southern District of New York pursuant to 28 U.S.C. §§ 1404(a) or 1406(a).

### A.    This action should be dismissed for improper venue pursuant to Rule 12(b)(3) or transferred pursuant to 28 U.S.C. § 1406(a).

Section 1406(a) authorizes a district court to dismiss a case filed in the wrong venue or, "if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  Venue is proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. . . ; or (3) if there is no district in which an action may otherwise be brought . . . , any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

---

[6] Alternatively, the Court has the discretion to transfer this action to the U.S. District Court for the Southern District of New York, where jurisdiction would be proper as to all Defendants.  *See Mitchell v. Eli Lilly & Co.*, 159 F. Supp. 3d 967, 972 (E.D. Mo. 2016).

As discussed above, none of Defendants are residents of Missouri, nor did any of the conduct at issue take place in Missouri. Mr. Elliot's presence in Missouri does not, by itself, make venue in this district proper. *See Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995) ("[B]y referring to 'events or omissions giving rise to the claim,' Congress meant to require courts to focus on relevant activities of the defendant, not of the plaintiff."). Moreover, there is a district in which this action could have been brought: the Southern District of New York, where a substantial part of the conduct at issue occurred and where all Defendants are subject to personal jurisdiction. Thus, venue in this district is improper, and this action should be dismissed or transferred pursuant to Section 1406(a).

### B. Alternatively, this action should be transferred to a more convenient forum pursuant to Section 1404(a).

At the very least, transfer is warranted pursuant to Section 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." As noted above, this action could have been brought in the Southern District of New York, and thus it is eligible for transfer there. To determine whether transfer is appropriate under Section 1404(a), a district court must consider a variety of factors relating to convenience and fairness. *See Discovery Pier Land Holdings, LLC v. Visioneering Envision.Design.Build, Inc.*, 2015 U.S. Dist. LEXIS 43497, at *7-8 (E.D. Mo. Apr. 2, 2015). The convenience factors include: "(1) the convenience of the parties; (2) the convenience of the witnesses; (3) access to records and documents; (4) the location where the conduct complained of occurred; and (5) the applicability of each forum state's substantive law." *Hex Stone v. JRC Marine*, 2019 U.S. Dist. LEXIS 241041, at *4-5 (E.D. Mo. Aug. 7, 2019). The fairness factors include: "(1) judicial economy; (2) the plaintiff's choice of forum;

(3) the comparative costs to the parties of litigating in each forum; (4) each party's ability to enforce a judgment; (5) obstacles to a fair trial; (6) conflict of law issues; and (7) the advantages of having a local court determine questions of local law." *Id.* at \*5.

In this case, the convenience factors strongly favor transfer to the Southern District of New York.  That venue would be far more convenient for Defendants, who are domiciled in New York, and it would not be inconvenient for Mr. Elliot, who consented "to jurisdiction of state and federal courts located in New York, New York" in the Agreement he entered with The Square, LLC.  Compl. Ex. 1; *see Discovery Pier Land Holdings*, 2015 U.S. Dist. LEXIS 43497, at \*8-9 ("A forum selection clause is determinative of the convenience of the parties.").  Given that the headquarters of NXIVM, the recording of Mr. Elliot's call with Ms. Constantino, and the Defendants responsible for producing *The Vow* were all located in New York, the Southern District of New York would be more convenient for most witnesses as well.  *See Perficient, Inc. v. Priore*, 2016 U.S. Dist. LEXIS 28335, at \*14 (E.D. Mo. Mar. 7, 2016) (when relevant conduct occurred elsewhere, "it appears unlikely that any non-party witnesses would be located in Missouri").  Additionally, New York law governs Mr. Elliot's claim under N.Y. Civ. Rights Law § 51, Compl. ¶ 55, and the interpretation of the Agreement pursuant to its choice-of-law provision, *id.* Ex. 1.  *See Discovery Pier Land Holdings*, 2015 U.S. Dist. LEXIS 43497, at \*13-14 (choice-of-law provision in contract weighed in favor of transfer).

The fairness considerations also support transfer.  While "federal courts give considerable deference to a plaintiff's choice of forum," *id.* at \*14 (cleaned up), the remaining factors are either neutral or weigh in favor of transfer.  The advantages of having a New York court apply New York law weigh "slightly in favor of transfer."  *Perficient*, 2016 U.S. Dist. LEXIS 28335, at \*17; *see also In re Apple, Inc.*, 602 F.3d 909, 915 (8th Cir. 2010) ("There is an appropriateness

in holding trial in a diversity case in the venue that is at home with the state law that must govern the case." (cleaned up)).  Given that Mr. Elliot has chosen to sue seven separate New York-based Defendants, collectively their comparative cost of litigating in Missouri would be much greater due to the number of people who would need to travel.  *Id.* at 913-14 (noting that defendant's "expenses for airfare, meals and lodging, and losses in productivity from time spent away from work" would be "significantly minimized or avoided by transfer").  The remaining factors are neutral.  There is no judicial economy advantage to litigating this case in either district, there are no obstacles to a fair trial in either district, and Mr. Elliot would have the ability to enforce a judgment in both districts.  *See id.* at 915 (rejecting argument that judicial economy favored keeping case in Arkansas over California because "whether one court would move any given case to trial faster is 'speculative'"); *Perficient*, 2016 U.S. Dist. LEXIS 28335, at *17 ("judgments from one district can be registered (and then enforced) in other districts").  Simply put, this case does not belong in Missouri, and it should be transferred to the Southern District of New York if this Court does not dismiss it outright.

## III.    ALTERNATIVELY, THIS ACTION SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

Even if jurisdiction and venue were proper, Mr. Elliot's action would nonetheless be subject to dismissal under Rule 12(b)(6) for failure to state a claim on multiple grounds.  First, Mr. Elliot signed an Agreement that released all claims relating to *The Vow*, which covers both of his claims here.  Second, Mr. Elliot's right of publicity claim fails because, in that same Agreement, he also gave written consent for the use of his name and voice.  Third, Mr. Elliot's right of publicity claim cannot stand because *The Vow* is an expressive work that uses his name and voice for an informative purpose.  Finally, Mr. Elliot's civil conspiracy claim is based on the same alleged violation of his right of publicity, and thus fails for the same reasons.

14

**A.  Plaintiff signed an agreement releasing any claims relating to *The Vow*.**

As Mr. Elliot acknowledges, he signed an Agreement with The Square, LLC in connection with his appearance on Season 2 of *The Vow*.  Compl. ¶¶ 26-30 & Ex. 1.  The Agreement provided consent to interview Mr. Elliot on camera "starting July 11th, 2020" and to use that footage and Mr. Elliot's "name, voice, likeness, and biography" in *The Vow*.  *Id.* Ex. 1.  Mr. Elliot also "agree[d] not to make any claim of any nature against [The Square, LLC] or any third party relating to the Documentary Series" and the filming of him, "including but not limited to claims for moral rights, defamation, privacy, publicity, or payment."  *Id.*  The release provision is fatal to Mr. Elliot's claims.

Under New York law, which governs the interpretation of the Agreement,[7] "a valid release constitutes a complete bar to an action on a claim which is the subject of the release." *Centro Empresarial Cempresa S.A. v. América Móvil, S.A.B. de C.V.*, 952 N.E.2d 995, 1000 (N.Y. 2011).  "Once a defendant meets the initial burden of establishing that" a release applies, the plaintiff bears the burden "to show that there has been fraud, duress or some other fact which will be sufficient to void the release."  *Moore v. Cohen*, 548 F. Supp. 3d 330, 338 (S.D.N.Y. 2021) (cleaned up), *aff'd*, 2022 U.S. App. LEXIS 18648 (2d Cir. July 7, 2022); *see also Klapper v. Graziano*, 10 N.Y.S.3d 560, 562 (App. Div. 2015) ("Such releases, which are commonly used in the entertainment industry, are enforceable and should not lightly be set aside.").

Although Mr. Elliot does not reference the Agreement's release provision in his Complaint, he pleads that the Agreement "specifically addressed only those times after July 11,

---

[7] The Agreement provides that "New York law shall govern this release."  Compl. Ex. 1; *see also PVI, Inc. v. Ratiopharm GmbH*, 253 F.3d 320, 329 (8th Cir. 2001) ("Federal courts sitting in diversity are required to look to the choice-of-law principles of the forum state," and "Missouri courts generally enforce contractual choice-of-law provisions").

2020."  Compl. ¶ 30.  But the plain language of the release provision of the Agreement is not limited by date and is not limited to footage recorded with Mr. Elliot's express consent.  *See* Ex. 1.  To the contrary, Mr. Elliot unambiguously agreed "not to make any claim of any nature" relating to *The Vow*, "including but not limited to claims for . . . privacy [or] publicity."  *Id.* Courts applying New York law have routinely dismissed claims arising from television shows based on similar releases.  *See, e.g.*, *Bihag v. A&E TV Networks, LLC*, 669 F. App'x 17, 18 (2d Cir. 2016); *Psenicska v. Twentieth Century Fox Film Corp.*, 409 F. App'x 368 (2d Cir. 2009); *Moore*, 548 F. Supp. 3d at 340; *Shapiro v. NFGTV, Inc.*, 2018 U.S. Dist. LEXIS 22879, at *17-24 (S.D.N.Y. Feb. 8, 2018); *Klapper*, 129 A.D.3d at 675-76.  Mr. Elliot's right of publicity and conspiracy claims should be dismissed because they have been released under the Agreement.

### B.    Plaintiff fails to state a misappropriation or right of publicity claim.

Mr. Elliot also fails to state a misappropriation or right of publicity claim on the merits, whether analyzed under Missouri or New York law.  *See* Compl. ¶¶ 54-55.

To state a claim for misappropriation under Missouri law, a "plaintiff must prove that the defendant used the plaintiff's name without consent to obtain some advantage."  *Doe v. TCI Cablevision*, 110 S.W.3d 363, 368 (Mo. 2003).  The elements are identical for right of publicity claim, "with the minor exception that the plaintiff must prove that the defendant used the name to obtain a *commercial* advantage."  *Id.* at 369.[8]  New York Civil Rights Law § 51 ("Section 51") provides a claim for the use of a person's "name, portrait, picture or voice" for "advertising purposes or for the purposes of trade" without "written consent."

---

[8] Defendants are not aware of any case recognizing a misappropriation or right of publicity claim based on the use of a person's voice under Missouri law.

1.    **Mr. Elliot gave written consent for the use of his name and voice.**

Mr. Elliot's claims fail as a matter of law because he gave written consent for the use of his name and voice.[9]   In the Agreement, Mr. Elliot authorized The Square, LLC and its "affiliates, successors, licensees and assigns" to "interview, film, photograph and record [him] starting July 11th, 2020 (collectively, the 'Footage'), in connection with the Forgotten Ones movement," and to "use the Footage *and* my name, voice, likeness and biography" in *The Vow*. Compl. Ex. 1 (emphasis added).   The use of the conjunction "and" indicates that Mr. Elliot gave permission to use his voice *in addition to* the use of the footage recorded after July 11, 2020.   In other words, Mr. Elliot gave general consent to use his "name, voice, likeness and biography" in *The Vow*.   His right of publicity claim should be dismissed on that basis.   *See, e.g.*, *Krupnik v. NBC Universal, Inc.*, 2010 N.Y. Misc. LEXIS 6785, at *11 (N.Y. Sup. Ct. June 29, 2010) (dismissing Section 51 claim based on "the clear written language of the release").

2.    **The use of Mr. Elliot's name and voice in *The Vow* is protected expression.**

Mr. Elliot's claim is also foreclosed by well-established limitations on the right of publicity for expressive works.   The Eighth Circuit has instructed that the right of publicity "must give way to" First Amendment considerations when the plaintiff's identity is used to inform or entertain.   *C.B.C. Distrib. & Mktg. v. Major League Baseball Advanced Media, L.P.*, 505 F.3d 818, 822-23 (8th Cir. 2007) (rejecting, on First Amendment grounds, right of publicity claim arising from use of baseball players' names and statistics in fantasy baseball games); *see*

---

[9] Although Mr. Elliot alleges that Defendants used his "voice, likeness and name" in *The Vow* without consent, Compl. ¶ 56, the depiction of the phone call with Ms. Constantino does not include Mr. Elliot's image or likeness.   The scene only uses Mr. Elliot's voice and his name in a chyron identifying the voice.   *See* Heller Decl. Ex. A at 24:37-27:44.

*also TCI Cablevision*, 110 S.W.3d at 373 ("[T]he use of a person's identity in news, entertainment, and creative works for the purpose of communicating information or expressive ideas about that person is protected 'expressive' speech.").

Similarly, New York courts have recognized an exception to Section 51 for "the use of a person's likeness with respect to newsworthy events or matters of public interest" in order "to avoid any conflict with the free dissemination of thoughts, ideas, newsworthy events, and matters of public interest guaranteed by the First Amendment." *Lohan v. Take-Two Interactive Software, Inc.*, 97 N.E.3d 389, 393 (N.Y. 2018) (cleaned up). "[D]ocumentary films concerning newsworthy events or subjects of public interest, including political events, social trends, scientific news, and stories of consumer interest," fall squarely within this exception and are fully protected by the First Amendment. *Beverley v. Choices Women's Med. Ctr., Inc.*, 587 N.E.2d 275, 279 (N.Y. 1991); *see also, e.g.*, *Alfano v. NGHT, Inc.*, 623 F. Supp. 2d 355, 358-61 (E.D.N.Y. 2009) (rejecting Section 51 claim based on documentary); *Colon v. City of Rochester*, 762 N.Y.S.2d 749, 753 (N.Y. App. Div. 2003) (same); *Delan v. CBS, Inc.*, 458 N.Y.S.2d 608, 613 (N.Y. App. Div. 1983) (same).

*The Vow* tells the story of a notorious group whose leaders committed serious crimes, which is plainly a matter of public concern. *See United States v. Raniere*, 2019 U.S. Dist. LEXIS 110735, at *3 (E.D.N.Y. July 2, 2019) (noting that the case "generated worldwide media coverage"); Compl. ¶¶ 16, 17 ("high-profile" prosecution "brought attention and publicity to NXIVM"). The use of the recorded call between Mr. Elliot and Ms. Constantino is directly tied to that newsworthy subject—it serves to inform viewers about NXIVM's response when one of its members attempted to leave the fold. In fact, Mr. Elliot has already unsuccessfully pursued a misappropriation claim against the producers and distributors of another documentary series

18

about NXIVM in which he was portrayed.  *See Elliot v. Lions Gate Entm't Corp.*, 639 F. Supp. 3d 1012, 1020 (C.D. Cal. 2022).  The court in that case not only dismissed Mr. Elliot's misappropriation claim, concluding that NXIVM was "a matter of public interest," *id.* at 1028, but also found that Mr. Elliot was responsible for paying attorneys' fees to the defendants under California's anti-SLAPP law, *id.* at 1029.[10]  Mr. Elliot's right of publicity claim should meet the same result here.

Significantly, the broad exemption from right of publicity claims for expressive works applies whether or not the work is made for profit.  *See, e.g.*, *C.B.C. Distrib. & Mktg.*, 505 F.3d at 823-24 (use of "baseball players' identities in its fantasy baseball products for purposes of profit" was protected by First Amendment); *Messenger v. Gruner + Jahr Printing & Publ'g*, 727 N.E.2d 549, 552 (N.Y. 2000) ("the fact that a publication may have used a person's name or likeness solely or primarily to increase the circulation of a newsworthy article—and thus to increase profits—does not mean that the name or likeness has been used for trade purposes within the meaning of" Section 51 (cleaned up)).  Thus, Mr. Elliot's allegations that Defendants "gained a commercial advantage from the use of" his name and voice "without his consent," Compl. ¶ 52, even if true, are irrelevant to the analysis.  Regardless of any profit motive, Mr. Elliot cannot state a right of publicity claim because the use of his name and voice in *The Vow* is protected expression.  For this reason as well, the claim should be dismissed.

---

[10] That case settled before the defendants filed their fee application.  *See* Joint Stipulation to Dismiss Action with Prejudice, Dkt. 52, *Elliot v. Lions Gate Entm't Corp.*, No. 2:21-cv-08206-SSS-DFM (C.D. Cal. Dec. 8, 2022).  Defendants in this case reserve the right to seek attorneys' fees in this action or a separate action under New York's anti-SLAPP law, N.Y. Civ. Rights Law § 70-a(1)(a).

### C.     Plaintiff fails to state a conspiracy claim.

"A claim of conspiracy alone is not actionable absent an underlying tort or wrongful act." *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002); *see also Williston v. Vasterling*, 536 S.W.3d 321, 335 (Mo. Ct. App. 2017) ("[A] trial court may dismiss a conspiracy count if the plaintiff fails to plead a cause of action for the underlying claim.").  Notably, while Mr. Elliot suggests that the recording of his phone call with Ms. Constantino was somehow improper, *see* Compl. ¶¶ 45, 47-48, he also admits that it was not in violation of New York's wiretap law, which requires the consent of only one party to a call, *id.* ¶ 43.  *See* N.Y. Penal Law §§ 250.00, 250.05.  As Ms. Constantino herself had provided consent, there was nothing improper about the recording.  Mr. Elliot's conspiracy claim is instead based on the exact same conduct as his right of publicity claim.  *See* Compl. ¶ 60 (alleging that Defendants conspired "to knowingly collect and publish for commercial gain the identity, likeness and voice of Plaintiff without his consent or any legal justification").  Because Mr. Elliot's right of publicity claim fails as a matter of law for the reasons stated above, the conspiracy claim fails as well and should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that their motion be granted and that this case be dismissed or transferred to the Southern District of New York for lack of personal jurisdiction or, in the alternative, for improper venue.  If the Court holds that it may exercise jurisdiction and that venue here is proper, Defendants respectfully request that the Complaint be dismissed for failure to state a claim.

Dated: January 12, 2023          Respectfully submitted,

BALLARD SPAHR LLP

By:    */s/ Elizabeth Seidlin-Bernstein*
        Elizabeth Seidlin-Bernstein (*pro hac vice*)
        1735 Market Street, 51st Floor
        Philadelphia, PA 19103-7599
        Telephone: 215.665.8500
        Facsimile: 215.864.8999
        seidline@ballardspahr.com

        LEWIS RICE LLC
        Joseph E. Martineau (#32397MO)
        Kolten C. Ellis (#74451MO)
        600 Washington Avenue, Suite 2500
        St. Louis, MO 63101
        Telephone: 314.444.7600
        Facsimile: 314.612.2042
        jmartineau@lewisrice.com
        kellis@lewisrice.com

        *Attorneys for Defendants*