**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MARC ELLIOT,

Plaintiff,

v.

HBO HOME ENTERTAINMENT CORP., a Delaware Corporation; JEHANE NOUJAIME, an individual; KARIM AMER, an individual; THE OTHRS, LLC, a Florida limited liability company; THE OTHRS LICENSING CORP., a Florida corporation; THE SQUARE, LLC, a New York limited liability company; ISABELLA CONSTANTINO, an individual; JOHN DOES 1–10,

Defendants.

Case No. 24-cv-7879-JPC-RFT

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

BALLARD SPAHR LLP

Elizabeth Seidlin-Bernstein
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: 215.665.8500
Facsimile: 215.864.8999
seidline@ballardspahr.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

BACKGROUND ........ 2

ARGUMENT ........ 4

I. Plaintiff signed an agreement releasing any claims relating to *The Vow* ........ 4

II. Plaintiff fails to state a misappropriation or right of publicity claim ........ 6

A. Mr. Elliot gave written consent for the use of his name and voice ........ 7

B. The use of Mr. Elliot's name and voice in *The Vow* is protected expression ........ 7

III. Plaintiff fails to state a conspiracy claim ........ 10

CONCLUSION ........ 11

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Alfano v. NGHT*,
623 F. Supp. 2d 355 (E.D.N.Y. 2009) ....................8

*Beverley v. Choices Women's Med. Ctr.*,
78 N.Y.2d 745 (1991) ....................8

*Bihag v. A&E Television Networks*,
669 F. App'x 17 (2d Cir. 2016) ....................5

*Biro v. Condé Nast*,
2014 WL 4851901 (S.D.N.Y. Sept. 30, 2014)....................2

*C.B.C. Distrib. & Mktg. v. Major League Baseball Advanced Media*,
505 F.3d 818 (8th Cir. 2007) ....................7, 8, 9

*Centro Empresarial Cempresa v. América Móvil*,
17 N.Y.3d 269 (2011) ....................5

*Champion v. Moda Operandi*,
561 F. Supp. 3d 419 (S.D.N.Y. 2021)....................6

*Colon v. City of Rochester*,
307 A.D.2d 742 (4th Dep't 2003)....................8

*CP III Rincon Towers v. Cohen*,
666 F. App'x 46 (2d Cir. 2016) ....................7

*Cummings v. Soul Train Holdings*,
67 F. Supp. 3d 599 (S.D.N.Y. 2014)....................6

*Davis v. High Soc'y Mag.*,
90 A.D.2d 374 (2d Dep't 1982) ....................9

*Delan v. CBS*,
91 A.D.2d 255 (2d Dep't 1983) ....................8, 9

*Doe v. TCI Cablevision*,
110 S.W.3d 363 (Mo. 2003) ....................6, 8

*Elliot v. Lions Gate Entm't Corp.*,
639 F. Supp. 3d 1012 (C.D. Cal. 2022) ....................9

*Foster v. Svenson*,
128 A.D.3d 150 (1st Dep't 2015) ....................8

*Glob. Art Exhibitions v. Kuhn & Bulow Italia Versicherungsmakler*,
607 F. Supp. 3d 421 (S.D.N.Y. 2022)....................................................................5

*Huggins v. Moore*,
94 N.Y.2d 296 (1999) ....................................................................................8

*Klapper v. Graziano*,
1289 A.D.3d 674 (2d Dep't 2015) ....................................................................5, 6

*Krupnik v. NBC Universal*,
2010 WL 9013658 (Sup. Ct. N.Y. Cnty. June 29, 2010)..........................................7

*Lohan v. Take-Two Interactive Software*,
31 N.Y.3d 111 (2018) ....................................................................................8

*Moore v. Cohen*,
548 F. Supp. 3d 330 (S.D.N.Y. 2021)..................................................................5, 6

*Nemani v. St. Louis Univ.*,
33 S.W.3d 184 (Mo. 2000) ..............................................................................7

*Psenicska v. Twentieth Century Fox Film Corp.*,
409 F. App'x 368 (2d Cir. 2009) ......................................................................5

*In re Ramaekers*,
33 F. Supp. 2d 312 (S.D.N.Y. 1999)....................................................................6

*Rogers v. Grimaldi*,
875 F.2d 994 (2d Cir. 1989)...........................................................................6, 8

*Shapiro v. NFGTV*,
2018 WL 2127806 (S.D.N.Y. Feb. 9, 2018)..........................................................6

*Szulik v. Tagliaferri*,
966 F. Supp. 2d 339 (S.D.N.Y. 2013)..................................................................5

*United States v. Raniere*,
2019 WL 2775617 (E.D.N.Y. July 2, 2019)..........................................................9

*United States v. Raniere*,
55 F.4th 354 (2d Cir. 2022) ............................................................................2

*Valentini v. Grp. Health*,
2021 WL 2444649 (S.D.N.Y. June 15, 2021) .......................................................10

*Williston v. Vasterling*,
536 S.W.3d 321 (Mo. Ct. App. 2017)................................................................10

**Statutes**

N.Y. Civ. Rights Law § 51 ....................6, 7, 8

N.Y. Civ. Rights Law § 70-a ....................9

N.Y. Penal Law § 250.00....................10

N.Y. Penal Law § 250.05....................10

**Other Authorities**

U.S. Const. amend. I .................... *passim*

Defendants Home Box Office, Inc. ("HBO," incorrectly sued as "HBO Home Entertainment Corp."), Jehane Noujaim (incorrectly sued as "Jehane Noujaime"), Karim Amer, The Othrs Licensing Corp., The Othrs, LLC, The Square, LLC, and Isabella Constantino (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiff Marc Elliot was a member of NXIVM, a cult-like self-improvement organization based in upstate New York whose leaders were convicted of serious crimes, including sex trafficking and racketeering. In this action, Mr. Elliot seeks to recover damages for the use of his name and voice in a documentary series about NXIVM called *The Vow*. Specifically, Mr. Elliot claims that Defendants violated his right of publicity and engaged in a conspiracy by recording a call between him and Defendant Isabella Constantino without his consent and using that recording in an episode of the series.

This case should be dismissed because Mr. Elliot fails to state a claim as a matter law. The right of publicity and civil conspiracy claims he asserts were released by an agreement he signed in connection with his voluntary appearance in *The Vow*. In that same agreement, Mr. Elliot also gave permission for the use of his name and voice in the series, which forecloses his right of publicity claim. Even in the absence of an agreement, however, Mr. Elliot's right of publicity claim would still fail because the use of the recorded call is expression protected from liability by the First Amendment and state law. Lastly, Mr. Elliot's conspiracy claim cannot survive when the tort underlying it—an alleged violation of his right of publicity—is based on conduct that is not actionable. In short, Mr. Elliot's claims are subject to dismissal because they lack any basis in law.

## BACKGROUND

Plaintiff Marc Elliot was a member of NXIVM, Compl. (ECF No. 1-1) ¶ 12, "a self-styled executive coaching and self-help organization" whose founder and "inner circle" were convicted of "various crimes, including sex trafficking, forced labor, identity theft, wire fraud, racketeering, sexual exploitation of a minor, possession of child pornography, and obstruction of justice." *United States v. Raniere*, 55 F.4th 354, 357 (2d Cir. 2022), *cert. denied*, 143 S. Ct. 1756 (2023). Mr. Elliot believes NXIVM's methods were "useful in overcoming his Tourette's Syndrome." Compl. ¶ 12. Defendant Isabella Constantino is a former member of NXIVM who received treatment for Tourette's Syndrome from Mr. Elliot and his colleagues.

Defendants Jehane Noujaim and Karim Amer are filmmakers who directed *The Vow*, a documentary series about NXIVM that was produced by Defendants The Othrs, LLC, The Square, LLC, and Defendant HBO and distributed by HBO. Compl. ¶¶ 21, 36, 40. Both Mr. Elliot and Ms. Constantino voluntarily appeared in the second season of *The Vow*. *Id.* ¶¶ 26-27, 38; Decl. of Elizabeth Seidlin-Bernstein ("Seidlin-Bernstein Decl.") Ex. A (episode in which Mr. Elliot and Ms. Constantino appear).[1] In connection with his appearance, Mr. Elliot signed a Consent and Release (the "Agreement") that gave permission to The Square, LLC and its "affiliates, successors, licensees and assigns" (collectively, the "Producer") to "interview, film, photograph and record me starting July 11th, 2020." Compl. Ex. 1. Mr. Elliot further authorized the Producer to use that footage "and my name, voice, likeness and biography" in *The Vow*. *Id.* As part of the Agreement, Mr. Elliot promised "not to make any claim of any nature against the Producer or any third party relating to the Documentary Series and your filming of me, including

[1] Courts may properly consider the challenged publication when deciding a motion to dismiss. *Biro v. Condé Nast*, 2014 WL 4851901, at *4 (S.D.N.Y. Sept. 30, 2014), *aff'd*, 807 F.3d 541 (2d Cir. 2015).

but not limited to claims for moral rights, defamation, privacy, publicity, or payment." *Id.* He also agreed "to jurisdiction of state and federal courts located in New York, New York" and that "New York law shall govern this release." *Id.*

Season 2, Episode 3 of *The Vow* portrayed Ms. Constantino fleeing NXIVM after learning of disturbing accusations against the organization's leaders. Seidlin-Bernstein Decl. Ex. A at 23:02-24:10. In the days after she left the organization, Ms. Constantino received calls and messages from a number of NXIVM members, including Mr. Elliot. *Id.* at 24:14-27:44. One of Mr. Elliot's calls with Ms. Constantino was depicted in the episode. *Id.* at 24:37-27:44. Ms. Constantino permitted that call to be recorded by a film crew for use in *The Vow*. Compl. ¶ 32. During the call, Mr. Elliot defended NXIVM and attempted to convince Ms. Constantino that the accusations were not true. Seidlin-Bernstein Decl. Ex. A at 24:37-27:44. Mr. Elliot alleges he did not know the call with Ms. Constantino was recorded and did not give consent for the recording to be used in the series. Compl. ¶ 25.

Mr. Elliot, proceeding *pro se*, first filed his Complaint in Missouri Circuit Court on October 31, 2023. Defendant HBO timely removed the case to the U.S. District Court for the Eastern District of Missouri on December 15, 2023. *See* ECF No. 1 ¶ 1 (Notice of Removal). Defendants then filed a motion to dismiss the case for failure to state a claim, lack of personal jurisdiction, and improper venue, or in the alternative to transfer the case to the Southern District of New York. ECF No. 31. On September 30, 2024, the Honorable Sarah E. Pitlyk granted Defendants' motion to transfer on personal jurisdiction grounds and denied their motion to dismiss for failure to state a claim "without prejudice to refiling" after the transfer took place. ECF No. 42 at 12. This Court received the transferred case on October 17, 2024. ECF No. 43.

At the parties' request, the Court entered an order setting a deadline of November 27, 2024 for Defendants' renewed motion to dismiss. ECF No. 49.

Mr. Elliot asserts two causes of action arising from the use of the recorded call with Ms. Constantino in *The Vow*. First, he claims that Defendants used his "voice, likeness and name to gain a commercial advantage for profit in a video production" in violation of his right of publicity. Compl. ¶ 56. Second, he claims that Defendants engaged in a civil conspiracy "to knowingly collect and publish for commercial gain" his "identity, likeness and voice" without his consent. *Id.* ¶ 60. He "seeks an award of damages in excess of $75,000." *Id.* at Wherefore cl. 2.

## ARGUMENT

### I. Plaintiff signed an agreement releasing any claims relating to *The Vow*.

As Mr. Elliot acknowledges, he signed an Agreement with The Square, LLC in connection with his appearance on Season 2 of *The Vow*. Compl. ¶¶ 26-30 & Ex. 1. The Agreement provided consent to interview Mr. Elliot on camera "starting July 11th, 2020" and to use that footage and Mr. Elliot's "name, voice, likeness, and biography" in *The Vow*. *Id.* Ex. 1. Mr. Elliot also "agree[d] not to make any claim of any nature against [The Square, LLC] or any third party relating to the Documentary Series" and the filming of him, "including but not limited to claims for moral rights, defamation, privacy, publicity, or payment." *Id.* The release provision is fatal to Mr. Elliot's claims.

Under New York law, which governs the interpretation of the Agreement,[2] "a valid release constitutes a complete bar to an action on a claim which is the subject of the release." *Centro Empresarial Cempresa v. América Móvil*, 17 N.Y.3d 269, 276 (2011). "Once a defendant meets the initial burden of establishing that" a release applies, the plaintiff bears the burden "to show that there has been fraud, duress or some other fact which will be sufficient to void the release." *Moore v. Cohen*, 548 F. Supp. 3d 330, 338 (S.D.N.Y. 2021) (cleaned up), *aff'd*, 2022 WL 2525722 (2d Cir. July 7, 2022) (summary order); *see also Klapper v. Graziano*, 1289 A.D.3d 674, 675 (2d Dep't 2015) ("Such releases, which are commonly used in the entertainment industry, are enforceable and should not lightly be set aside.").

Although Mr. Elliot does not reference the Agreement's release provision in his Complaint, he pleads that the Agreement "specifically addressed only those times after July 11, 2020." Compl. ¶ 30. But the plain language of the release provision of the Agreement is not limited by date and is not limited to footage recorded with Mr. Elliot's express consent. *See id.* Ex. 1. To the contrary, Mr. Elliot unambiguously agreed "not to make any claim of any nature" relating to *The Vow*, "including but not limited to claims for . . . privacy [or] publicity." *Id.* Courts applying New York law have routinely dismissed claims arising from television shows based on similar releases. *See, e.g.*, *Bihag v. A&E Television Networks*, 669 F. App'x 17, 18 (2d Cir. 2016); *Psenicska v. Twentieth Century Fox Film Corp.*, 409 F. App'x 368 (2d Cir. 2009);

---

[2] The Agreement provides that "New York law shall govern this release." Compl. Ex. 1. Because the Missouri court in which this case originated lacked personal jurisdiction over Defendants, New York's choice-of-law principles apply. *See Szulik v. Tagliaferri*, 966 F. Supp. 2d 339, 371 (S.D.N.Y. 2013) ("[W]hen the transferor court lacks personal jurisdiction over a defendant, the transferee court's choice-of-law principles govern."). New York "courts will generally enforce choice-of-law clauses." *Glob. Art Exhibitions v. Kuhn & Bulow Italia Versicherungsmakler*, 607 F. Supp. 3d 421, 429 (S.D.N.Y. 2022).

*Moore*, 548 F. Supp. 3d at 340-44; *Shapiro v. NFGTV*, 2018 WL 2127806, at *1-9 (S.D.N.Y. Feb. 9, 2018); *Klapper*, 129 A.D.3d at 674-76. Mr. Elliot's right of publicity and conspiracy claims should be dismissed because they have been released under the Agreement.

## II. Plaintiff fails to state a misappropriation or right of publicity claim.

Mr. Elliot also fails to state a misappropriation or right of publicity claim on the merits, whether analyzed under Missouri or New York law. *See* Compl. ¶¶ 54-55 (citing both states' law).[3]

To state a claim for misappropriation under Missouri law, a "plaintiff must prove that the defendant used the plaintiff's name without consent to obtain some advantage." *Doe v. TCI Cablevision*, 110 S.W.3d 363, 368 (Mo. 2003). The elements are identical for right of publicity claim, "with the minor exception that the plaintiff must prove that the defendant used the name to obtain a *commercial* advantage." *Id.* at 369.[4] New York Civil Rights Law § 51 ("Section 51") provides a claim for the use of a person's "name, portrait, picture, likeness or voice" for "advertising purposes or for the purposes of trade" without "written consent."

[3] It appears that Missouri's right of publicity law most likely applies in this case, as "a plaintiff domiciled outside of New York cannot maintain a claim for damages under Section 51." *Champion v. Moda Operandi*, 561 F. Supp. 3d 419, 443 (S.D.N.Y. 2021); *see also Rogers v. Grimaldi*, 875 F.2d 994, 1002-03 (2d Cir. 1989) (applying Oregon's right of publicity law to Oregon domiciliary's claim); *Cummings v. Soul Train Holdings*, 67 F. Supp. 3d 599, 602-03 (S.D.N.Y. 2014) (applying Illinois' right of publicity law to Illinois domiciliary's claim). The First Amendment constraints on Missouri's common law, however, are matters of federal constitutional law governed by Supreme Court and Second Circuit precedent. *See In re Ramaekers*, 33 F. Supp. 2d 312, 315 (S.D.N.Y. 1999) ("Binding precedent for the district courts within a circuit is established by the Supreme Court and by the court of appeals for the circuit in which the district court sits."). Even if New York's misappropriation law applies, Mr. Elliot's claims fail for the reasons stated in this motion.

[4] Defendants are not aware of any case recognizing a misappropriation or right of publicity claim based on the use of a person's voice under Missouri law.

**A. Mr. Elliot gave written consent for the use of his name and voice.**

Mr. Elliot's claims fail as a matter of law because he gave written consent for the use of his name and voice.[5] In the Agreement, Mr. Elliot authorized The Square, LLC and its "affiliates, successors, licensees and assigns" to "interview, film, photograph and record [him] starting July 11th, 2020 (collectively, the 'Footage'), in connection with the Forgotten Ones movement," and to "use the Footage *and* my name, voice, likeness and biography" in *The Vow*. Compl. Ex. 1 (emphasis added). The use of the conjunction "and" indicates that Mr. Elliot gave permission to use his voice *in addition to* the use of the footage recorded after July 11, 2020 – otherwise the language following "Footage" would be superfluous. *See CP III Rincon Towers v. Cohen*, 666 F. App'x 46, 51 (2d Cir. 2016) ("It is well-established that we disfavor readings of a contract that render provisions of an agreement superfluous."). In other words, Mr. Elliot gave general consent to use his "name, voice, likeness and biography" in *The Vow*. His right of publicity claim should be dismissed on that basis. *See, e.g.*, *Krupnik v. NBC Universal*, 2010 WL 9013658, at *4 (Sup. Ct. N.Y. Cnty. June 29, 2010) (dismissing Section 51 claim based on "the clear written language of the release"); *see also Nemani v. St. Louis Univ.*, 33 S.W.3d 184, 186 (Mo. 2000) (reversing verdict on misappropriation claim because plaintiff gave implied consent for use of his name).

**B. The use of Mr. Elliot's name and voice in *The Vow* is protected expression.**

Mr. Elliot's claim is also foreclosed by well-established limitations on the right of publicity for expressive works. Missouri's right of publicity tort "must give way to" First

[5] Although Mr. Elliot alleges that Defendants used his "voice, likeness and name" in *The Vow* without consent, Compl. ¶ 56, the depiction of the phone call with Ms. Constantino does not include Mr. Elliot's image or likeness. The scene only uses Mr. Elliot's voice and his name in a chyron identifying the voice. *See* Seidlin-Bernstein Decl. Ex. A at 24:37-27:44.

Amendment considerations when the plaintiff's identity is used to inform or entertain. *C.B.C. Distrib. & Mktg. v. Major League Baseball Advanced Media*, 505 F.3d 818, 822-23 (8th Cir. 2007) (rejecting, on First Amendment grounds, Missouri right of publicity claim arising from use of baseball players' names and statistics in fantasy baseball games); *see also Rogers*, 875 F.2d at 1004 (holding that First Amendment shielded use of plaintiff's name in movie title from Oregon right of publicity claim); *TCI Cablevision*, 110 S.W.3d at 373 ("[T]he use of a person's identity in news, entertainment, and creative works for the purpose of communicating information or expressive ideas about that person is protected 'expressive' speech.").

Similarly, New York courts have recognized an exception to Section 51 for "the use of a person's likeness with respect to newsworthy events or matters of public interest" in order "to avoid any conflict with the free dissemination of thoughts, ideas, newsworthy events, and matters of public interest guaranteed by the First Amendment." *Lohan v. Take-Two Interactive Software*, 31 N.Y.3d 111, 120 (2018) (cleaned up). Courts have interpreted "public interest" in this context to be synonymous with "public concern," a term long discussed in New York cases. *See, e.g.*, *Foster v. Svenson*, 128 A.D.3d 150, 159 (1st Dep't 2015). Matters of public concern include anything "fairly considered as relating to any matter of political, social, or other concern of the community." *Huggins v. Moore*, 94 N.Y.2d 296, 303 (1999). Accordingly, "documentary films concerning newsworthy events or subjects of public interest, including political events, social trends, scientific news, and stories of consumer interest," fall squarely within the newsworthiness exception and are fully protected by the First Amendment. *Beverley v. Choices Women's Med. Ctr.*, 78 N.Y.2d 745, 752 (1991); *see also, e.g.*, *Alfano v. NGHT*, 623 F. Supp. 2d 355, 358-61 (E.D.N.Y. 2009) (rejecting Section 51 claim based on documentary); *Colon v. City of Rochester*, 307 A.D.2d 742, 744 (4th Dep't 2003) (same); *Delan v. CBS*, 91 A.D.2d 255, 258-59 (2d Dep't

1983) (same).

*The Vow* tells the story of a notorious group whose leaders committed serious crimes, which is plainly a matter of public concern. *See United States v. Raniere*, 2019 WL 2775617, at *1 (E.D.N.Y. July 2, 2019) (noting that the case "generated worldwide media coverage"); Compl. ¶¶ 16, 17 ("high-profile" prosecution "brought attention and publicity to NXIVM"). The use of the recorded call between Mr. Elliot and Ms. Constantino is directly tied to that newsworthy subject—it serves to inform viewers about NXIVM's response when one of its members attempted to leave the fold. In fact, Mr. Elliot has already unsuccessfully pursued a misappropriation claim against the producers and distributors of another documentary series about NXIVM in which he was portrayed. *See Elliot v. Lions Gate Entm't Corp.*, 639 F. Supp. 3d 1012, 1020 (C.D. Cal. 2022). The court in that case not only dismissed Mr. Elliot's misappropriation claim, concluding that NXIVM was "a matter of public interest," *id.* at 1028, but also found that Mr. Elliot was responsible for paying attorneys' fees to the defendants under California's anti-SLAPP law, *id.* at 1029.[6] Mr. Elliot's right of publicity claim should meet the same result here.

Significantly, the broad exemption from right of publicity claims for expressive works applies whether or not the work is made for profit. *See, e.g.*, *C.B.C. Distrib. & Mktg.*, 505 F.3d at 823-24 (use of "baseball players' identities in its fantasy baseball products for purposes of profit" was protected by First Amendment); *Davis v. High Soc'y Mag.*, 90 A.D.2d 374, 379 (2d Dep't 1982) ("It has long been recognized that use of a name or picture by the media in

---

[6] That case settled before the defendants filed their fee application. *See* Joint Stip. to Dismiss Action with Prejudice, ECF No. 52, *Elliot v. Lions Gate Entm't Corp.*, No. 2:21-cv-08206-SSS-DFM (C.D. Cal. Dec. 8, 2022). Defendants in this case reserve the right to seek attorneys' fees in this action or a separate action under New York's anti-SLAPP law, N.Y. Civ. Rights Law § 70-a(1)(a).

connection with a newsworthy item is protected by the First Amendment and is not considered a use for purposes of trade within the ambit of the Civil Rights Law. This is true irrespective of the fact that such publications are carried on largely, and even primarily, to make a profit." (cleaned up)). Thus, Mr. Elliot's allegations that Defendants "gained a commercial advantage from the use of" his name and voice "without his consent," Compl. ¶ 52, even if true, are irrelevant to the analysis. Regardless of any profit motive, Mr. Elliot cannot state a right of publicity claim because the use of his name and voice in *The Vow* is protected expression. For this reason as well, the claim should be dismissed.

## III. Plaintiff fails to state a conspiracy claim.

It is well settled that "New York does not recognize civil conspiracy to commit a tort as an independent cause of action." *Valentini v. Grp. Health*, 2021 WL 2444649, at *15 (S.D.N.Y. June 15, 2021) (Cronan, J.), *aff'd*, 2023 WL 2027273 (2d Cir. Feb. 16, 2023) (summary order); *see also Williston v. Vasterling*, 536 S.W.3d 321, 335 (Mo. Ct. App. 2017) (under Missouri law, "if the underlying wrongful act alleged as part of a civil conspiracy fails to state a cause of action, the civil conspiracy claim fails as well" (cleaned up)). Notably, while Mr. Elliot suggests that the recording of his phone call with Ms. Constantino was somehow improper, *see* Compl. ¶¶ 45, 47-48, he also admits that it was not in violation of New York's wiretap law, which requires the consent of only one party to a call, *id.* ¶ 43. *See* N.Y. Penal Law §§ 250.00, 250.05. As Ms. Constantino herself had provided consent, there was nothing improper about the recording. Mr. Elliot's conspiracy claim is instead based on the exact same conduct as his right of publicity claim. *See* Compl. ¶ 60 (alleging that Defendants conspired "to knowingly collect and publish for commercial gain the identity, likeness and voice of Plaintiff without his consent or any legal justification"). Because Mr. Elliot's right of publicity claim fails as a matter of law for the reasons stated above, the conspiracy claim fails as well and should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that their motion be granted and that this case be dismissed with prejudice for failure to state a claim.

Dated: November 26, 2024

Respectfully submitted,

BALLARD SPAHR LLP

By: */s/ Elizabeth Seidlin-Bernstein*

Elizabeth Seidlin-Bernstein
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: 215.665.8500
Facsimile: 215.864.8999
seidline@ballardspahr.com

*Attorneys for Defendants*